1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )
     v.                            )  No. 15 CR 00526
                                   )
THADDEUS JIMENEZ and JOSE ROMAN,)  Chicago, Illinois
                                   )  September 9, 2015
          Defendants.              )  10:09 a.m.

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE HARRY D. LEINENWEBER

APPEARANCES:

For the Plaintiff:          HON. JOHN R. LAUSCH, JR.
                            United States Attorney
                            BY:  MS. MICHELLE PETERSEN
                                 MS. KATHRYN E. MALIZIA
                            Assistant United States Attorneys
                            219 South Dearborn Street, Suite 500
                            Chicago, Illinois 60604
                            (312) 353-5300

For Defendant Jimenez:      FRANKEL & COHEN
                            BY:  MR. SCOTT J. FRANKEL
                            53 West Jackson Boulevard
                            Suite 1615
                            Chicago, Illinois 60604
                            (312) 759-9600

                            ADAMS DEFENSE LAW
                            BY:  MR. JOSHUA ADAMS
                            53 West Jackson Boulevard
                            Suite 1515
                            Chicago, Illinois 60604
                            (312) 566-9173

For Defendant Roman:          GOTTREICH & GRACE
                              BY:  MR. MARC E. GOTTREICH
                              311 West Superior Avenue, Suite 215
                              Chicago, Illinois 60654
                              (312) 943-0600
                              mgott@312crimlaw.com

Court Reporter:               Judith A. Walsh, CSR, RDR, F/CRR
                              Official Court Reporter
                              219 South Dearborn Street, Room 1944
                              Chicago, Illinois 60604
                              (312) 702-8865
                              judith_walsh@ilnd.uscourts.gov

(Proceedings heard in open court:)

THE CLERK: 15 CR 526, United States versus Thaddeus Jimenez and Jose Roman.

THE COURT: Good morning.

MS. PETERSEN: Good morning, your Honor.

MR. GOTTREICH: Good morning, Judge. Judge, for the record, Marc Gottreich, G-o-t-t-r-e-i-c-h, on behalf of Jose Roman.

MS. PETERSEN: Good morning, your Honor. Michelle Petersen and Kathryn Malizia for the United States.

THE COURT: Where is Mr. Frankel? Isn't he --

MS. PETERSEN: Is he in the lockup?

MR. GOTTREICH: No, he's not.

MS. PETERSEN: Your Honor, I thought he was in the back, but I guess he's not.

THE COURT: Has anybody seen him?

MR. GOTTREICH: I have not. I remember last week when we were here, he did say he'd be 10, 15 minutes late -- he had another matter -- at worst.

THE COURT: Well, can we proceed with Mr. Roman and then --

MS. PETERSEN: Sure, your Honor.

MR. GOTTREICH: Thank you, Judge.

(Pause.)

THE COURT: All right. This is application of

Mr. Roman for bond; is that right?

MS. PETERSEN: Yes, your Honor.

THE COURT: Does the government wish to proceed, or how do we proceed on this?

MS. PETERSEN: Yes, your Honor. The government will proceed. The government seeks detention in this case. We believe the defendant is a danger to the community. The underlying facts of the case, your Honor, it's not just a mere possession case. This is a case where a man was shot in broad daylight and seriously injured.

Defendants Jimenez and Roman were together in a car, Albany Park, August 17th, about 10:00 in the morning. Mr. Jimenez was driving, and Mr. Roman was the passenger, but they were both armed, each armed with their own semiautomatic firearm.

Defendant Jimenez pulled up near a man on the street in broad daylight and shot him in both of his legs, shattering his femurs, two shots. He was the one that pulled the trigger, but both men in the car were armed.

Police were nearby. They saw the Mercedes driven by defendant Jimenez pulling away from the shooting. They began following it. It was traveling at a high rate of speed, weaving in and out of oncoming traffic. Police were pursuing it with their lights on. The defendant did not pull over and, in fact, the car was only stopped when defendant Jimenez

crashed into a parked car when he lost control. As soon as the car crashed, both defendants got out of the car and ran away. And both defendants were armed. Defendant Roman was armed with a loaded semiautomatic firearm.

Defendant -- both defendants are self-admitted members of the Simon City Royals gang. Mr. Roman has Royals tattoos. And both defendants were on pretrial release for pending state cases at the time of the shooting. In fact, Mr. Roman already had two pending state gun cases at the time of this shooting, so that makes -- this is his third pending gun case.

He has a history of bond forfeiture and a history of termination of supervision as unsuccessful. Your Honor, if you look back at his criminal history, he has seven prior cases with bond forfeitures. He has had supervision unsuccessfully terminated twice. He is facing state charges for this shooting for which he's being held without bond. And this is simply an individual who does not respect the Court's orders and does not respect his conditions of release. And he poses a serious danger to the community. And no combination of conditions could protect the community, your Honor.

THE COURT: Counsel?

MR. GOTTREICH: Thank you, Judge. Judge, just as far as the underlying case goes, the victim who was shot in that case gave a handwritten statement to the police and the

State's attorneys, and they were unable to identify Mr. Roman as the passenger in the car. In fact, the person who was shot said he didn't see who the passenger in the car was. The police did not see the shooting. They just came upon the car where Mr. -- where Thaddeus was in sometime after the shooting and found Mr. Roman in the passenger seat.

So I don't know if -- my client is really not brought into the shooting. He was allegedly found with a gun, that is correct with what the government says. My client has one prior felony case for which he received boot camp. He did successfully complete that.

The failures for supervision and so on that the State names, and they are listed in the pretrial services report, are for misdemeanors, Judge. The one felony he does have in his background, he did successfully complete. It is true, my client does have two pending state gun cases for which he posted bond and for which they were set for trial numerous times without the police showing up, and we are at the point where we're going to start demanding trial on those matters.

We would ask for home confinement. Pretrial Services did speak to my client's grandmother, Sandra Lopez, who does live in Chicago who said that she could house him at her residence if he were granted home confinement, Judge.

THE COURT: Let's see. The pending case was August 17th of this year. Is that one of them?

MS. PETERSEN: That's the facts that gave rise to this case, your Honor.

THE COURT: That was this case. Okay.

MS. PETERSEN: His two pending gun cases are from June of 2014 and October of 2014. Your Honor, the pretrial services for October 2014, it says, "not listed," sort of in the column for the status of the state cause, but I did confirm with the ASA that that case is still pending against defendant Roman.

MR. GOTTREICH: And I represent him on both of those cases, Judge. That is correct.

THE COURT: Well, it seems to me that one of the cases, there's a pending -- was that over now? The violation of bond and petition --

MR. GOTTREICH: Judge --

THE COURT: -- is that based on this?

MR. GOTTREICH: That is still pending. It's based on this.

THE COURT: It seems to me that based on his history and apparent gang membership, the three pending gun cases, that the public needs to be protected from him, so I'm going to deny the application for bond.

MR. GOTTREICH: Thank you, Judge.

MS. PETERSEN: Thank you, your Honor.

THE COURT: And we'll wait until Mr. Jimenez gets

here.

MS. PETERSEN: Your Honor, I would also ask that time be excluded until our next status of October 20th to give defense counsel time to review discovery.

MR. GOTTREICH: No objection.

THE COURT: All right. Time will be excluded from today's date through -- when is the next? Oh, October 20th?

MS. PETERSEN: Yes, your Honor.

THE COURT: I think I already excluded that for pretrial motions anyway.

MS. PETERSEN: Oh, okay. Thank you.

THE COURT: Thank you.

MR. GOTTREICH: Thank you, Judge.

(Recess from 10:17 a.m. to 11:15 a.m.)

THE CLERK: 15 CR 526, United States versus Thaddeus Jimenez.

MS. PETERSEN: Good morning again, your Honor. Michelle Petersen and Kathryn Malizia for the United States.

MR. FRANKEL: Good morning, your Honor. Scott Frankel on behalf of Thaddeus Jimenez. I apologize for my delay, Judge.

MR. ADAMS: Good morning, Judge. Josh Adams for Mr. Jimenez who is present.

THE COURT: All right.

MR. FRANKEL: Judge, we're here for a detention

hearing.

MS. PETERSEN: Would you like me to begin, your Honor?

THE COURT: Yes. Go ahead.

MS. PETERSEN: Your Honor, I'm going to repeat some of what I said at Mr. Roman's detention hearing for the benefit of Mr. Jimenez and his counsel.

Your Honor, this is not just a mere possession case. This is a case where the defendant shot someone in broad daylight in the legs, shattering both of his femurs and seriously injuring him. Defendant was driving in a car with his co-defendant, Jose Roman, in Albany Park. It was the morning of August 17th. They pulled up alongside the victim, and Mr. Jimenez shot him. And the shell casings at the scene matched the caliber of the weapon that was recovered from the defendant.

Moments after the shooting, the police saw the car being driven by defendant Jimenez and began to follow him. He was traveling at a high rate of speed. The officers activated their lights. And the defendant wove in and out of oncoming traffic and did not pull over and, in fact, the car was only stopped when defendant lost control of it and hit a parked car.

After the car was stopped, the defendant got out of the car with the firearm in his hand. The police got out of

the car in pursuit. Defendant dropped the firearm and ran out into oncoming traffic and attempted to jump on vehicles that were driving down the street in an attempt to get away from the police. The police were able to apprehend the defendant. They were also able to recover the firearm that had been in his hand, and it was a semiautomatic .22 caliber pistol.

The police also reviewed pole cam footage that shows that right before the shooting, the defendant and his co-defendant were loading bags into the back of defendant's Mercedes, the same Mercedes he was driving at the time of the shooting, and those bags were found to contain ammunition that matched the caliber of defendant's weapon and ammunition that matched the caliber of Jose Roman's weapon.

The defendant is the self-admitted leader of the Simon City Royals gang. He has Royals tattoos. And after he was arrested in this case, he was shouting "Royal love" in lockup.

He was on pretrial release for pending state cases at the time of this shooting. He has a history of bond forfeitures and a termination of supervision as unsuccessful. He has at least three prior cases with bond forfeitures. He had supervision terminated unsuccessfully once, and I also note that he has a conviction for failure to appear. He's a dangerous person who does not respect the Court's orders, and there's no combination of conditions that can protect the

community.

Your Honor, I also note that defendant was not candid with Pretrial. Defendant won a civil lawsuit in 2013 based on his wrongful prosecution, and he won a settlement of approximately $25 million, of which he received at least 13, 12, $13 million after attorney's fees.

He told Pretrial that he only owns three automobiles, but a recent check by an ATF analyst of Secretary of State records show he's a registered owner of 13 vehicles including a number of high-end vehicles he did not tell Pretrial Services about: A Bentley, numerous BMWs.

Over the past two years, he spent over $2 million on automobiles for himself and for others including buying a Range Rover for his co-defendant Jose Roman. And we believe he has control over a number of those assets and could sell them to obtain cash.

He also lists no monetary assets to Pretrial Services. He lists no cash on hand and no bank accounts. However, the government would like to note that over the past two years, he's withdrawn $8.5 million in cash from his bank accounts including up to $180,000 on one day. That turns his assets from a traceable bank account to cash which is completely untraceable.

The government does not know how much cash he has on hand, but certainly, between the cars and all these cash

withdrawals, he has significant assets at his disposal for which he can continue to buy weapons and to cause violence in the city.

He also told Pretrial Services he was a truck driver. However, Pretrial Services was -- a tow truck driver -- unable to verify that, and defendant does not even have a valid driver's license.

So combined with his lack of candor to Pretrial Services and the violence and the danger caused by his fleeing in this case, the government believes there's just simply no conditions that could assure the safety of the community.

THE COURT: Mr. Frankel?

MR. FRANKEL: Judge, first of all, Ms. Petersen addressed the facts of the case. And what we're going to say about that is that we will contest and disagree with the facts as stated by the prosecutor here, Judge. And I think that the evidence ultimately will bear out that what we say about the facts will be accurate.

As far as bond forfeiture warrants, Judge, she says there are three bond forfeiture warrants. One of them, I know for sure because I represented Mr. Jimenez, was listed here on October 8th, 2014. That warrant, that case came into the courtroom in Skokie under the wrong name. Mr. Jimenez and I were trying to find the court date. The clerk's office had completely lost the -- the correct court date, and we were

only able to discover it later, and we cleared that up for him. And so that should not be listed as a bond forfeiture warrant because really it was a clerk's error that caused that problem.

THE COURT: It says "warrant returned executed, defendant not in court, bench warrant ordered."

MR. FRANKEL: Right. We went to court. We were --

THE COURT: Pled guilty, found guilty, sentenced to one day.

MR. FRANKEL: Yes. So that's how we resolved it.

Judge, with regard to the prior background, he does have an agg DUI, which also I'm representing him on. And in that case, Judge, I can tell you that the converted -- they did a blood test after the accident, and after the conversion, his blood alcohol level was .06, significantly below the legal limit. And that case is currently set for a bench trial at 26th and California.

So if you look at his background, Judge, he really does not have a significant background; some misdemeanors, an agg DUI that we're fighting where the blood alcohol level was lower than the legal limit substantially. And so I don't think that should be taken into account against him in the Court's determination of bond.

As far as the discussion of money goes, Judge, what I heard was speculation that there's money available because it

was withdrawn from the bank. But I don't think the prosecution or anyone really knows if there's any money available, what's available --

THE COURT: How about the fact that he's listed as the owner of 13 automobiles.

MR. FRANKEL: I'm not -- I don't know all the details of those cars and where they are. Some of them have been seized, Judge, and are -- some of them aren't his. His name --

THE COURT: Well, the fact of the matter is --

MR. FRANKEL: --is on the title, but I don't know, you know, if he has control over those cars anymore or why only three of them were listed.

THE COURT: Well, he lists no monetary assets. Nevertheless, he states that -- let's see.

MR. FRANKEL: Pardon me?

THE COURT: He lists no monetary assets and does not have a job. He is -- he claims that he's supporting -- he contributes to household expenses with sister, he assists with the children as needed and he incurs 7,000 yearly expense for property taxes, did not know details regarding his -- he has to have some monetary assets.

MR. FRANKEL: Judge, I know that there's a Lamborghini listed here, a 2007 Lamborghini. I know that that vehicle was sold recently because --

THE COURT: What happened to the money?

MR. GOTTREICH: There was a Lamborghini that was sold because I assisted the family with some of the documents that were required to sell.

THE COURT: But the point of the matter is that he walked away with 12 to 13 million. He withdrew, what, 100-some thousand in cash recently. And he lists no assets other than a Lamborghini and a Jaguar and his residence. So maybe he spent all the money. I mean, that's one possibility, I guess, that he would have spent 13 million.

MR. FRANKEL: Judge, that's -- I don't really know. I just know that what I heard from the prosecutor was speculation that he's using this money to finance -- that there's money available and that he's using it to finance gang activity. I don't think anybody knows if that's true or not. And I think it doesn't even rise to the level of what's necessary for a bond hearing.

THE COURT: Well, there's probable cause, apparently, that he shot a man and seriously injuring him and that he fled from the police and was arrested with a weapon or that he disposed of the weapon, but he had a weapon in his possession when seen by the police.

I think this is a case where he should be retained. I don't think that the public is safe with him on the outside with apparently, though somewhat speculative, I guess, whether

he has any money left or not. But if he's been buying and selling automobiles, he must have some assets left. So I'm going to deny the motion.

MR. FRANKEL: Okay. Judge, another issue we'd like to address with the Court is that Mr. Jimenez has been held in solitary confinement in Kankakee. There -- I understand that there's some -- there's a separation order with the other defendant on the case and maybe some of the other defendants who are alleged to be members of the same gang, but the separate -- as the separatee is applied to the other defendants in federal court, they're separated from each other but not isolated.

And for some unknown reason, Mr. Jimenez is isolated 24 hours a day in a cell that has his own toilet and those kinds of facilities, but he doesn't get out of that cell at all. Is that -- and I don't think there's any basis for it.

THE COURT: I think that's standard operating procedure in Kankakee, though. I just was talking to Judge Gettleman who was conducting an investigation of Kankakee, and he said that that's -- that none of them get out down there, which is probably not good, but I don't know if he's being treated any differently than anybody else.

MR. FRANKEL: Aside from the fact that he doesn't get out of his cell, he's completely isolated from the general population. So if --

THE COURT:  I think they all are, was another thing that Judge Gettleman told me.

MR. FRANKEL:  Yes, I don't think so, Judge.  I think they're separated from each other.

THE COURT:  I don't know.  Can the government check on it and see what --

MS. PETERSEN:  Yes, your Honor.  The government has not filed a separation order or requested separation for these defendants, so if they are being separated, that's at the discretion of the marshals and the Kankakee facility.

THE COURT:  I'm not sure what I can do, although if he's being unnecessarily treated differently than other people, but I was told that this is standard operating procedure in Kankakee.  Now, if that's not the case, then perhaps they can explain why that he's being treated differently.

MR. FRANKEL:  I can find out a little more --

THE COURT:  Maybe you can find out.

MR. FRANKEL:  -- and see why he's being held in isolation.

THE COURT:  Bring it up.  Maybe --

MR. FRANKEL:  If they don't have an explanation, maybe come to the Court with a motion to have him --

THE COURT:  All right.

MR. FRANKEL:  -- transferred to another -- to the

MCC.

THE COURT:  Why don't you do that, and in the interim, the motion is denied.

MS. PETERSEN:  And, your Honor, just for the record, I believe it is, but can time be excluded until our next status on October 20th?

MR. FRANKEL:  I have no objection.

THE COURT:  I know I did for Mr. -- yeah, I would have done it for both.  Yeah, it is until the 20th.

MS. PETERSEN:  Thank you, your Honor.

THE COURT:  All right.  Thank you.

MR. ADAMS:  Thanks, Judge.

THE COURT:  Maybe you can check on it and bring it back up on the 20th about what's happening.

MR. FRANKEL:  I will.  Thanks, Judge.

(Proceedings adjourned at 11:30 a.m.)

C E R T I F I C A T E

I, Judith A. Walsh, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the Honorable HARRY D. LEINENWEBER, one of the judges of said court, at Chicago, Illinois, on September 9, 2015.

*/s/ Judith A. Walsh, CSR, RDR, F/CRR*_____          April 4, 2018

Official Court Reporter

United States District Court

Northern District of Illinois

Eastern Division